In the Matter of Melvin Leo
McKenzie, Bankrupt.

Melvin Leo McKENZIE,
Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 75–1425.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1975.

Decided June 4, 1976.

Scott P. Crampton, Asst. Atty. Gen., Karl Schmeidler, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., Donald B. Mack-

ay, U. S. Atty., Springfield, Ill., Robert J. Kauffman, Asst. U. S. Atty., Peoria, Ill., for defendant-appellant.

James S. Brannon, Peoria, Ill., for plaintiff-appellee.

Before ADAMS * and TONE, Circuit Judges, and CAMPBELL, Senior District Judge.**

WILLIAM J. CAMPBELL, Senior District Judge.

The facts of this case are undisputed. For the 1968 and 1969 tax years, Melvin Leo McKenzie (hereafter "taxpayer" or "appellee") became indebted to the Internal Revenue Service (IRS) for income and F.I.C.A. taxes in the amount of $3,947.46, of which $2,953.22 represented income and F.I.C.A. taxes withheld from the wages paid by taxpayer to his employees. This latter amount shall hereafter be referred to as the "trust fund" portion of taxpayer's indebtedness. In addition, for the 1968 tax year, appellee owed income taxes in the amount of $2,566.03.

In December of 1969, having discontinued his business as operator of a gasoline service station, taxpayer conferred with I R S Agent Edwin E. McKenzie (no relation) concerning payment of back taxes. It was agreed that taxpayer would forthwith commence payment of $100.00 per month toward his tax indebtedness. The evidence showed that, during this conference, Agent McKenzie told appellee that the "trust fund" portion of the indebtedness would be satisfied first, and that the remaining taxes due would be paid thereafter.

From December of 1969 through December of 1970, appellee paid $500.00 to the I R S, which amount was duly credited against the trust fund portion of the debt. From April of 1971 through April of 1974, an additional $1,313.12 was paid and applied (apparently without taxpayer's knowledge) toward the discharge of his 1968 non-trust fund tax liability.

---

* Circuit Judge Arlin M. Adams of the United States Court of Appeals for the Third Circuit is sitting by designation.

** Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

In the meantime, taxpayer initiated bankruptcy proceedings and, on July 3, 1974, was adjudicated a bankrupt. On July 8, 1974, he filed a complaint in bankruptcy court for a determination that his tax indebtedness constituted a dischargeable debt, pursuant to Section 17 of the Bankruptcy Act, 11 U.S.C. § 35. After filing an answer asserting that the United States had not waived its sovereign immunity, the government moved to dismiss the complaint on the ground that the bankruptcy court lacked jurisdiction.

After a hearing on the merits, the bankruptcy court held that it possessed jurisdiction, and that (1) the $1,313.12 paid between April, 1971 and April, 1974 should have been applied to the trust fund portion of the indebtedness; (2) that $1,140.10, the remaining portion of the trust fund indebtedness, remained due and owing, and was not dischargeable in bankruptcy; and (3) that the $2,566.03 in income taxes owed for 1968 and $994.24 representing the employer's share of F.I.C.A. taxes for the years 1968 and 1969 were dischargeable, and had been discharged, in bankruptcy. On appeal from this decision, the district court affirmed.

In this court, the government argues that since it did not file a proof of claim for taxes, did not otherwise participate in the bankruptcy proceedings, and did not voluntarily consent to the bankruptcy court's jurisdiction in this particular case, that court lacked jurisdiction over the United States on sovereign immunity grounds. Appellant further argues that the pertinent provisions of the Bankruptcy Act do not apply to an indebtedness for federal taxes, and that the taxpayer's complaint, in reality, seeks a declaratory judgment for federal taxes. In this latter regard, the government notes that the Declaratory Judgment Act, 28 U.S.C. § 2201, provides that a declaratory judgment may be granted in a case of actual controversy "except with respect to federal taxes". Finally, the government argues that the bankruptcy court, and the district court, erred in requiring the I R S to apply the last $1,313.12 in tax payments to the non-dischargeable trust fund indebtedness.

The issues presented by the government in this case have been raised and rejected in several thorough and well reasoned recent opinions; see, *Bostwick v. United States*, 521 F.2d 741 (8th Cir., 1975); *Gwilliam v. United States*, 519 F.2d 407 (9th Cir., 1975); *In Re Durensky*, 377 F.Supp. 798 (N.D.Tex. 1974), aff'd 519 F.2d 1024 (5th Cir., 1975). Another detailed discussion of these issues by this court is therefore unnecessary.

With respect to the government's sovereign immunity argument, it is axiomatic that the sovereign immunity of the United States can be waived impliedly, as well as explicitly, by statute. See, *Schlafly v. Volpe*, 495 F.2d 273, 280–282 (7th Cir., 1974). In this regard, Section 2(a)(2A) of the Bankruptcy Act, 11 U.S.C. § 11(a)(2A), provides that courts of bankruptcy have jurisdiction to:

> "Hear and determine, . . . any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction . . . .".

The government's arguments to the contrary notwithstanding, we agree with the analysis of District Judge Mahon of the Northern District of Texas, *In Re Durensky*, 377 F.Supp. 798, 801, and that of the Circuit Courts in *Gwilliam*, 519 F.2d 407 at 409–410 and *Bostwick*, 521 F.2d 741 at 743–744, holding that the bankruptcy court possesses jurisdiction under Section 2(a)(2A) "to determine the amount and legality of the federal taxes due and owing by the Bankrupt for the years as alleged and to determine the Bankrupt's liability and provable indebtedness therefore . . . .". *Gwilliam, supra*, at 410. We further hold that in conferring jurisdiction under Section 2(a)(2A), Congress implicitly waived the sovereign immunity of the United States.

In addition, Section 17 of the Bankruptcy Act, 11 U.S.C. § 35 provides, *inter alia*, that

a discharge in bankruptcy releases the bankrupt from all of his provable debts except taxes which become due and owing within three years preceding bankruptcy, except for taxes "which the bankrupt has collected or withheld from others as required by the laws of the United States . . . .".

Section 17(c) further provides that the bankrupt may file an application with the court for "the determination of the dischargeability of *any debt*", and that

"After hearing upon notice, the court shall determine the dischargeability of *any debt* for which an application for such determination has been filed, shall make such orders as are necessary to protect or effectuate a determination that *any debt* is dischargeable and, if *any debt* is determined to be nondischargeable, shall determine the remaining issues, render judgment, and make all orders necessary for the enforcement thereof." (Emphasis added).

We hold that Section 17(c), in explicitly allowing the bankrupt to file an application for the determination of the dischargeability of "any debt" waives the sovereign immunity of the United States in any bankruptcy action in which the United States is alleged to be a creditor of the bankrupt, including instances in which federal taxes have become due and owing.

Nor, for the reasons thoroughly discussed in the aforementioned decisions, do we consider the government's failure to file a proof of claim for taxes in the bankruptcy proceedings in any way determinative of the jurisdictional issues here presented. In our view, Section 17 cannot be read as imposing any such condition upon the bankrupt's right to file an application for the determination of dischargeability of his federal tax indebtedness.

The government suggests that, in invoking Section 17(c) to obtain a determination of the dischargeability of his tax indebtedness, taxpayer is actually seeking a declaratory judgment, and that the Declaratory Judgment Act, 28 U.S.C. § 2201, specifically provides that declaratory judgments may not be obtained with respect to federal taxes. We agree with the *Bostwick* court that "it is manifestly clear that the 'applications' are not requests for declaratory judgments in the sense that the statute is intended to prohibit", 521 F.2d 741, 747. But even if the proceeding instituted pursuant to Section 17(c) could be analogized to a declaratory judgment action, we see no reason why Congress may not provide for such a remedy in a statute, separate and apart from the Declaratory Judgment Act. In excluding determinations as to federal taxes under 28 U.S.C. § 2201, Congress clearly did not preclude itself from allowing similar determinations in bankruptcy proceedings pursuant to Section 17(c). As the *Bostwick* court noted, we "cannot believe that Congress gave the bankruptcy court jurisdiction to determine the dischargeability of tax debts where the United States has not filed a proof of claim, as we have held, and then intended that the determination should be prohibited by the Declaratory Judgment Act." *Bostwick*, supra at 747.

Finally, the government contends that the court below erred in requiring the I R S to apply the $1,313.12 paid between April, 1971 and April, 1974, toward the discharge of the trust fund indebtedness. Under Section 17(a) a discharge in bankruptcy does not release the bankrupt from taxes which he "has collected or withheld from others as required by the laws of the United States . . . but has not paid over; . . . ." Thus, the $2,953.22 owed to the I R S in withholding taxes and employee Social Security taxes, which had been withheld by the taxpayer during 1968 and 1969, constituted a nondischargeable indebtedness.

It is undisputed that the first five hundred dollars paid by the taxpayer was applied against this trust fund indebtedness. However, the next $1,313.12 was applied by the I R S against other taxes owed by the appellee. The bankruptcy court and the district court held that these payments should have been applied against the trust fund portion of the debt because, at his

initial conference with I R S Agent McKenzie, appellee was told that future payments would be so applied.

The government argues that the courts below erred in this respect, contending that while the taxpayer may direct the application of a payment to discharge a particular tax indebtedness, in the absence of a specific agreement to this effect, the I R S may apply payments collected in partial satisfaction of tax claims, as it sees fit.

Appellee does not argue with this proposition. However, as the courts below held, the taxpayer was told by Agent McKenzie in 1969 that the payments received would be applied first to discharge the trust fund indebtedness. It would be an exercise in form over substance to require the taxpayer to specifically request that his payments be used to discharge a specific indebtedness, where he has already been assured that the payments would be used for that purpose. As the bankruptcy judge noted in his memorandum opinion:

> "It is true that in the instant case the bankrupt did not give specific instructions or directions but it was unnecessary for him to do so because the Internal Revenue Agent informed him as to the manner in which the payments would be applied. It would be over technical to say that a taxpayer would have to give specific instructions and directions even after having been told by the Internal Revenue Agent how the money was to be applied. The bankrupt was entitled to rely upon the agreement that he reached with the agent."

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.