CUDAHY, Circuit Judge.
 

 In this appeal we are presented with a question of first impression at the federal appellate level: whether section 207 of the Social Security Act, 42 U.S.C. § 407 (1976), confers on the Social Security Administration (“SSA”) a blanket exemption from the operation of the bankruptcy laws, so that a debt owing to the SSA because of an overpayment of benefits cannot be discharged in bankruptcy. We hold that the SSA enjoys no such immunity from the bankruptcy laws and that the overpayment debt is dis-chargeable under the provisions of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 1 et
 
 seq.
 
 (Supp. Ill 1979) (the “Code” or “Bankruptcy Code”).
 

 I.
 

 The debtor and plaintiff in this action, Randall B. Neavear, began receiving social security disability benefits in 1968. Beginning in January, 1976, and continuing until August, 1979, Neavear was not disabled, having engaged in substantial gainful activity as a part-time, self-employed real estate broker. Neavear failed to report this activity to the SSA as required by 20 C.F.R. § 404.1588 (1981), and he and his family continued to receive disability benefits until they were terminated by the SSA in August of 1978.
 

 In August, 1979, Neavear again became disabled and was thus entitled to receive benefits under the statute. The SSA, however, commenced a proceeding to offset the earlier payments improperly received by Neavear against the future benefits to which he was now entitled. Section 204(a) of the Social Security Act, 42 U.S.C. § 404(a) (1976), authorizes such a recovery or recoupment of overpayments by decreasing future benefits. In a decision issued on February 26, 1980, the Administrative Law Judge (“AU”) found that Neavear had been overpaid $19,818.10 in disability benefits. The ALJ further ruled that a waiver of the recoupment was not warranted because, under section 204(b), 42 U.S.C. § 404(b) (1976), Neavear was not “without fault” in receiving the overpayments and because recoupment would not “defeat the purpose” of the statute. The ALJ accordingly ordered that future benefits payable to Neavear be reduced in satisfaction of the overpayment debt.
 
 [1]
 
 Neavear did not seek administrative or judicial review of this decision.
 
 [2]
 

 On April 8, 1980, Neavear filed his Chapter 7 bankruptcy petition, listing on his
 
 *1203
 
 schedule of debts the $19,818.10 overpayment debt to the SSA. Neavear was subsequently granted a discharge by the bankruptcy court but the SSA continued to reduce his disability benefits pursuant to the ALJ’s recoupment order. On July 14, 1980, Neavear filed a complaint in the bankruptcy court seeking a declaration that the overpayment debt had been discharged. The Secretary answered the complaint and interposed four affirmative defenses: (1) that Neavear’s action was barred because of his failure to exhaust administrative remedies; (2) that the court lacked jurisdiction because the government had not waived its defense of sovereign immunity; (3) that section 207 of the Social Security Act, 42 U.S.C. § 407 (1976), rendered the debt non-dischargeable in bankruptcy; and (4) that the SSA’s right of recoupment created a statutory lien precluding discharge of the overpayment debt.
 
 [3]
 
 The bankruptcy court found in favor of the SSA on the first three affirmative defenses, but did not address the question of a statutory lien.
 
 Neavear v. Schweiker,
 
 16 B.R. 528 (Bkrtcy, C.D.Ill. 1981). The district court affirmed without opinion.
 

 II.
 

 At the outset we are faced with two issues in the nature of jurisdictional obstacles to Neavear’s action against the Secretary: the applicability of the doctrines of administrative exhaustion and sovereign immunity.
 

 The bankruptcy court held that Neavear’s complaint was barred because of his failure to seek administrative review of the Secretary’s determination that he was at fault in receiving the overpayments of benefits. This ruling was erroneous. “The basic purpose of the exhaustion doctrine is to allow the administrative agency to perform functions within its special competence — to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies.”
 
 Continental Can Co.
 
 v.
 
 Marshall,
 
 603 F.2d 590, 597 (7th Cir. 1979);
 
 see Parisi
 
 v.
 
 Davidson,
 
 405 U.S. 34, 37, 92 S.Ct. 815, 817, 31 L.Ed.2d 17 (1972);
 
 McKart v. United States,
 
 395 U.S. 185, 193-95, 89 S.Ct. 1657, 1662-63, 23 L.Ed.2d 194 (1969). None of these purposes would be even remotely served by applying the exhaustion doctrine in the instant case.
 

 The bankruptcy court apparently believed that Neavear’s complaint in effect sought review of the ALJ’s recoupment order. To the contrary, Neavear does not contest the validity of that administrative determination but instead seeks from the bankruptcy court an order declaring that the overpayment debt has been discharged. Neavear thus requests relief that could not have been granted in the administrative proceeding, and the issue of dischargeability presented to the bankruptcy court does not invoke the “special competence” of the SSA.
 
 Rowan v. Morgan,
 
 15 B.R. 834, 837-38 (Bkrtcy, N.D.Ohio 1981).
 
 [4]
 
 We thus conclude that Neavear was not required, as a condition of obtaining relief in the bankruptcy court, to pursue lengthy and quite possibly groundless administrative appeals of the ALJ’s recoupment decision.
 

 There is a somewhat more challenging question whether the Secretary’s invocation of the defense of sovereign immunity precludes Neavear’s action. The bankruptcy court held that it did, reasoning that sovereign immunity may be waived only where the government files a proof of claim. Because the Secretary did not file a claim in the instant case, the court concluded, he was not amenable to suit at the instance of a Chapter 7 debtor.
 

 The bankruptcy court’s decision appears to have ignored section 106(c) of the Code,
 
 *1204
 
 11 U.S.C. § 106(c) (Supp. III 1979).
 
 [5]
 
 That section, unlike sections 106(a) and (b), does not condition the waiver of sovereign immunity upon the filing of a proof of claim.
 
 [6]
 
 The legislative history of section 106(c) indicates that it was enacted in order to codify the Ninth Circuit’s decision in
 
 Gwilliam v. United States,
 
 519 F.2d 407 (9th Cir. 1975). 124 Cong.Rec. H11,091 (daily ed. Sept. 28, 1978); 124 Cong.Rec. S17,407 (daily ed. Oct. 6, 1978).
 
 Gwilliam
 
 held that, notwithstanding the failure by the government to file a proof of claim, the bankruptcy court possessed jurisdiction under section 17(c) of the former Bankruptcy Act, 11 U.S.C. § 35(c) (1976), to determine the dischargeability of tax debts upon application of the debtor.
 
 [7]
 

 See also McGugin v. District Director of IRS (In re Dolard),
 
 519 F.2d 282 (9th Cir. 1975). This court followed
 
 Gwilliam
 
 in
 
 McKenzie v. United States,
 
 536 F.2d 726 (7th Cir. 1976), where we upheld the jurisdiction of the bankruptcy court to determine the dischargeability of a tax debt despite .the government’s failure to file a proof of claim:
 

 We hold that Section 17(c), in explicitly allowing the bankrupt to file an application for the determination of the dis-chargeability of “any debt” waives the sovereign immunity of the United States
 
 in any bankruptcy action in which the United States is alleged to be a creditor of the bankrupt,
 
 including instances in which federal taxes have become due and owing.
 

 536 F.2d at 729 (emphasis supplied).
 

 Section 106(c) thus preserves the rule, established in
 
 Gwilliam
 
 and approved by this court in
 
 McKenzie,
 
 that a debtor may seek a declaration from the bankruptcy court that a debt owed to an agency of the United States is dischargeable. Just as in
 
 McKenzie,
 
 we perceive no basis for distinguishing between a debt owed to the SSA and those debts owed to the Internal Revenue Service at issue in
 
 Gwilliam
 
 and
 
 McKenzie.
 
 Accordingly, we hold that section 106(c) of the Bankruptcy Code waives the sovereign immunity of the United States with respect to questions relating to the dischargeability of debts owed to the government. The bankruptcy court thus committed error when it refused, on grounds of sovereign immunity, to adjudicate the dischargeability of Neavear’s overpayment debt.
 

 Having concluded that the bankruptcy court had jurisdiction to adjudicate the dis-chargeability of the overpayment debt, we turn now to the question whether that debt was dischargeable in bankruptcy.
 

 III.
 

 Section 727(b) of the Bankruptcy Code, 11 U.S.C. § 727(b) (Supp. III 1979), provides
 
 *1205
 
 that a discharge in bankruptcy “discharges the debtor from
 
 ail debts
 
 that arose before the date of the order for relief,” (emphasis supplied), except as provided in section 523.
 
 [8]
 
 The issue presented in the instant case is whether section 207 of the Social Security Act, 42 U.S.C. § 407 (1976), confers on the SSA a blanket exemption from the operation of the Bankruptcy Code, so that an overpayment debt is nondischargeable regardless whether the debt falls within one of the exceptions to discharge listed in section 523.
 

 Section 207 provides:
 

 The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this süb-chapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
 

 42 U.S.C. § 407 (1976). By its terms, section 207 is concerned with the protection of social security benefits from the reach of creditors. Since 1963, however, the SSA has interpreted this provision more expansively. Social Security Ruling SSR 63-7 (1963). The SSA believes that the reference in section 207 to “rights existing under this subchapter” embraces not only the rights of social security recipients but also the rights of the agency itself — including the SSA’s right to recoup overpayments under section 204, 42 U.S.C. § 404 (1976). The SSA asserts, therefore, that Congress in section 207 conferred upon it a total exemption from the operation of all bankruptcy laws.
 

 In support of the SSA’s interpretation of section 207, the Secretary relies solely on the language of the statute.
 
 [9]
 
 He offers no reasons of policy to explain why Congress supposedly gave the SSA rights enjoyed by no other creditor,
 
 [10]
 
 and he does not point to any legislative history supporting his sweeping interpretation. Above all, however, the Secretary’s argument must fail because it asks us, in construing the reference to “rights” in section 207, to disregard the surrounding text. Section 207 speaks throughout in terms of the rights of social security
 
 recipients
 
 (the rights to “future payment,” and to “moneys paid or payable”) and the protection of their
 
 benefits
 
 from the reach of creditors (through “execution, levy, attachment, garnishment, or other legal process”). The exemption from “the operation of any bankruptcy or insolvency law” (which should be construed as parallel to the preceding forms of legal process) simply closes off what would otherwise be an additional avenue for creditors to satisfy their claims from the social security benefits of the debtor.
 
 [11]
 
 Thus, section
 
 *1206
 
 207 deals only with the protection of social security benefits from creditor action. The Secretary’s interpretation of the section turns the statute on its head, since this interpretation would transform a provision designed to protect social security recipients from creditors into a provision conferring super-creditor status on the SSA. We thus conclude that section 207 provides an exemption from the bankruptcy laws only for the benefits of social security recipients, and does not operate to prevent a debtor from obtaining a discharge of a debt owed to the SSA because of an overpayment.
 
 [12]
 

 Our conclusion that section 207 poses no obstacle to a debtor seeking a discharge of an overpayment debt does not, of course, mean that every social security recipient who receives, not without fault, an overpayment of benefits may escape his duty to repay those benefits by means of a quick discharge in bankruptcy. To the contrary, section 523 of the Code provides that debts arising from transactions involving “false pretenses, a false representation, or actual fraud,” are not dischargeable. 11 U.S.C. § 523(a)(2)(A) (Supp. III 1979). While we do not necessarily accept what appears to have been the Secretary’s argument in the bankruptcy court — that the ALJ’s determination that Neavear was at fault in obtaining the overpayments constitutes a finding of a “false representation” precluding discharge — we do agree that at least in some cases an overpayment debt may fall within this category of exceptions to discharge. Whether Neavear’s debt to the SSA is such a nondischargeable debt under section 523 is a question we leave for the bankruptcy court to decide on remand of this case.
 
 [13]
 

 Finally, we pause to note that two recent cases, one now awaiting review in this court, have concluded as we do today that overpayment debts owing to the SSA are dischargeable in bankruptcy.
 
 Rowan v. Morgan,
 
 15 B.R. 834 (Bkrtcy, N.D.Ohio 1981);
 
 Gutierrez v. Schweiker,
 
 15 B.R. 268 (N.D.Ill.1981),
 
 appeal docketed,
 
 No. 81-2243 (7th Cir. 1981). The reasoning employed in these cases, however, is different from ours. Both cases held that the SSA had failed to make timely objections under section 523(c) to the discharge of the overpayment debts. Both courts either accepted or ignored the argument that section 207 of the Social Security Act itself exempts overpayment debts from discharge under the Bankruptcy Code, and found instead that the Code repealed section 207 by implication.
 
 [14]
 
 We take a more direct path, however, and hold
 
 *1207
 
 that section 207 does not by itself render overpayment debts nondischargeable. We thus have no occasion to reach the question of an implied repeal.
 

 IV.
 

 For the reasons stated herein, we hold that the bankruptcy court had jurisdiction to adjudicate the dischargeability of an overpayment debt owed to the SSA and that section 207 of the Social Security Act does not prevent the discharge of such a debt. We therefore reverse the judgments of the courts below and remand the case for a consideration of the two issues not yet addressed by the bankruptcy court: whether Neavear’s overpayment debt is nondis-chargeable under section 523 of the Code and whether the overpayment debt creates a statutory lien precluding discharge.
 

 Reversed and remanded.
 

 [1]
 

 . By June 30, 1980, the overpayment debt had been reduced to $11,407.20 as a result
 
 of
 
 the recoupment order.
 

 [2]
 

 . Neavear could have appealed the ALJ’s decision, first to an ALJ appointed by the Associate Commissioner for Hearings and Appeals, 20 C.F.R. § 404.929 (1981), then to the Appeals Council within the SSA, 20 C.F.R. § 404.967 (1981), and finally to the district court, 42 U.S.C. § 405(g) (1976).
 

 [3]
 

 . The SSA also asserted a defense based on an alleged absence of a justiciable case or controversy. That argument appears to have been abandoned.
 

 [4]
 

 .
 
 Cf. Finnerty v. Cowen,
 
 508 F.2d 979 (2d Cir. 1974) (plaintiff not required to exhaust administrative remedies where he sought judicial resolution of a constitutional question that could not be adjudicated by the federal agency).
 

 [5]
 

 . Section 106(c), 11 U.S.C. § 106(c) (Supp. III 1979), provides:
 

 (c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—
 

 (1) a provision of this title that contains “creditor”, “entity”, or “governmental unit” applied to governmental units; and
 

 (2) a determination by the court of an issue arising under such a provision binds governmental units.
 

 [6]
 

 . That a waiver of sovereign immunity may be found even though the government has not filed a proof of claim is illustrated by
 
 Remke, Inc. v. United States,
 
 5 B.R. 299 (Bkrtcy, E.D. Mich. 1980), in which a bankruptcy court held that a Chapter 11 debtor could recover a preferential transfer from the Internal Revenue Service pursuant to section 547 of the Code. 11 U.S.C. § 547 (Supp. III 1979). In reaching this conclusion, the court stated, “the government’s contention that a governmental unit’s defense of sovereign immunity is waived only in cases in which the government has filed a proof of claim, is without merit.” 5 B.R. at 302 (footnote omitted).
 

 [7]
 

 . Section 17(c), 11 U.S.C. § 35(c) (1976), authorized the bankrupt to file an application with the bankruptcy court for “the determination of the dischargeability of
 
 any debt.”
 
 (Emphasis supplied). This provision was not carried forward into the new Bankruptcy Code, but this fact does not detract from the continued applicability of
 
 Gwilliam
 
 and related cases. The legislative history of the Code indicates that section 17(c) was “deleted as unnecessary, in view of the comprehensive grant of jurisdiction prescribed in proposed 28 U.S.C. 1471(b), which is adequate to cover the full jurisdiction that the bankruptcy courts have today over dischargeability and related issues under Bankruptcy Act § 17c.” H.Rep.No.95-595, 95th Cong., 1st Sess. 363 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6319.
 

 [8]
 

 . Section 523, 11 U.S.C. § 523 (Supp. III 1979), provides in pertinent part:
 

 (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
 

 (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
 

 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor’s or an insider’s financial condition ....
 

 [9]
 

 . In its interpretive ruling, the SSA relied on the Supreme Court’s decision in
 
 United States v. Munsey Trust Co.,
 
 332 U.S. 234, 239, 67 S.Ct. 1599, 1601, 91 L.Ed. 2022 (1947), as authority for the conclusion that the agency’s right to recoup overpayments is one of the “rights” protected by section 207.
 
 Munsey Trust
 
 was a government contract case, however, and not a case arising under the Social Security Act. The decision thus sheds no light on the question whether Congress intended section 207 to exempt the SSA in its role as a creditor from the operation of the Bankruptcy Code.
 

 [10]
 

 . Not even the Internal Revenue Service has been accorded the favorable treatment in bankruptcy that the SSA now contends it was granted. Under the Bankruptcy Code, tax claims generally receive a sixth priority, 11 U.S.C. § 507(a)(6) (Supp. III 1979), and are nondis-chargeable only if they fall within the limited exceptions of section 523, 11 U.S.C. § 523 (Supp. III 1979).
 

 [11]
 

 . Under the Bankruptcy Code, social security benefits are included in the property of the estate. 11 U.S.C. § 541(c) (Supp. III 1979). Such benefits can be exempted, however, either under section 522(d)(10)(A), or, if the debtor so elects, under section 522(b)(2)(A), which grants an exemption for “any property that is exempt
 
 *1206
 
 under Federal law, other than” section 522(d). Section 207 is one of the “Federal law” exemptions.
 
 See In re Smith,
 
 640 F.2d 888, 890 (7th Cir. 1981);
 
 Cheeseman v. Nachman,
 
 656 F.2d 60, 62 n.5 (4th Cir. 1981). Thus, section 207 operates to exempt social security benefits from the property of the estate.
 

 [12]
 

 . Section 207 is similar to other statutes that remove government benefits from the reach of creditors.
 
 See, e.g.,
 
 5 U.S.C. § 8130 (1976); 33 U.S.C. § 775 (1976); 38 U.S.C. § 770(g) (1976); 38 U.S.C. § 3101 (1976); 42 U.S.C. § 1717 (1976). Other statutes that expressly conferred on government agencies in their role as creditors an exemption from discharges in bankruptcy, however, were repealed when the Bankruptcy Code was enacted.
 
 See
 
 20 U.S.C. § 1087 -3 (1976),
 
 repealed by
 
 Pub.L.No. 95-598, Title III, § 317, 92 Stat. 2678 (1978); 42 U.S.C. § 294f(g) (1976),
 
 repealed by
 
 Pub.L.No. 95-598, Title III, § 327, 92 Stat. 2679 (1978); 42 U.S.C. § 656(b) (1976),
 
 repealed by
 
 Pub.L.No. 95-598, Title III, § 328, 92 Stat. 2679 (1978). Although not conclusive, the fact that Congress did not repeal section 207 when these other statutes granting exceptions to discharge were repealed is some evidence that Congress never regarded section 207 as rendering social security overpayment debts nondischargeable.
 

 [13]
 

 . The Secretary apparently raised the argument that the overpayment debt was nondis-chargeable under section 523(a)(2) for the first time in his memorandum in opposition to Neav-ear’s motion to strike the affirmative defenses. In light of this fact, we suggest that the bankruptcy court on remand consider the timeliness of the Secretary’s objection to discharge. 11 U.S.C. § 523(c) (Supp. III 1979).
 
 See Rowan v. Morgan,
 
 15 B.R. 834, 839 (Bkrtcy, N.D.Ohio 1981);
 
 Gutierrez v. Schweiker,
 
 15 B.R. 268 (D.C.N.D.Ill.1981),
 
 appeal docketed.
 
 No. 81-2243 (7th Cir. 1981).
 

 [14]
 

 .
 
 Rowan
 
 and
 
 Gutierrez
 
 relied on
 
 In re Buren, 6
 
 B.R. 744 (D.C.M.D.Tenn.1980),
 
 appeal docketed,
 
 No. 80-5427 (6th Cir. 1981), for their conclusion that the Bankruptcy Code impliedly repealed section 207.
 
 Burén
 
 does hold that the Code effected an implied repeal of section 207, but in circumstances quite different than those in the instant case. At issue in
 
 Buren
 
 was the power of the bankruptcy court under 11 U.S.C. § 1325(b) (Supp. III 1979) to order the SSA to