692 F.2d 1158
 In re STATE OF SOUTH DAKOTA, Petitioner.
AMERICAN RE-INSURANCE COMPANY, a Delaware Corporation, Appellee,
v.
William J. JANKLOW, Individually and as Governor of the
State of South Dakota; Vernon L. Larson, Individually and
as Auditor of The State of South Dakota; Tim Engelhart,
Individually and as Director of the Bureau of Administration
of the State of South Dakota; James E. Brinkman,
Individually and as Director of the Department of Purchasing
and Printing of the State of South Dakota, Appellants.
The Bureau of Administration of the State of South Dakota;
and the State of South Dakota.
 Nos. 82-1783, 82-1875.
 United States Court of Appeals,
Eighth Circuit.
 Submitted July 14, 1982.
Decided Nov. 12, 1982.
As Amended Dec. 2, 1982.
 
 Mark V. Meierhenry, Atty. Gen., Grant Gormley, Mark Smith, Asst. Attys. Gen., Pierre, S.D., for petitioner.
 Lawrence L. Piersol, Celia Miner, Legal Intern, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., James M. Samples, Stephen D. Bell, Faegre & Benson, Minneapolis, Minn., for American Re-Ins. Co.
 Gary E. Davis, Rick Johnson, Johnson, Eklund & Davis, Gregory, S.D., for appellants.
 Before LAY, Chief Judge, and HEANEY and McMILLIAN, Circuit Judges.
 LAY, Chief Judge.
 
 
 1
 The State of South Dakota has filed an original petition seeking a writ of prohibition under 28 U.S.C. Sec. 1651 to prevent the enforcement of a preliminary injunction issued by the United States District Court for the District of South Dakota. We have informally consolidated this petition with an appeal by four individual state officers against whom the injunction is directed.
 
 
 2
 Facts.
 
 
 3
 In June 1981, American Re-Insurance Co. filed suit against the State of South Dakota, its Bureau of Administration, and four officers of the state in their individual and official capacities. The four individual defendants are William J. Janklow, Governor; Vernon L. Larson, Auditor; Tim Engelhart, Director of the Bureau of Administration; and James E. Brinkman, Director of the Department of Purchasing and Printing. American alleged that the state breached a contract to lease computer equipment and that the individual defendants tortiously interfered with the contract, depriving American of its constitutional and civil rights. Jurisdiction was premised on the fourteenth amendment and article I, section 10 of the Constitution, and on 42 U.S.C. Sec. 1983. In an earlier appeal[1] this court affirmed the dismissal of American's action against the state and its Bureau of Administration, on the ground that the state had not waived its eleventh amendment immunity from suit. This court also held, however, that "the declaratory and injunctive portions of American's complaint must be reinstated against the four individual appellees in their individual and official capacities." 676 F.2d at 1183.
 
 
 4
 On remand, on June 29, 1982, the district court, at American's request, issued a preliminary injunction against the four individual officials, commanding them to "desist and refrain from any and all interference with the Lease Agreement" between the parties. American Re-Insurance Co. v. Janklow, Civ. 81-4090 (D.S.D. June 29, 1982).[2] On July 1, 1982, this court granted a stay of the district court's injunction, pending disposition of the petition for a writ of prohibition filed by the state to prevent the injunction's enforcement.
 
 
 5
 The state argues that the injunction in effect commands the individual officers of the state to make payments under the lease, and that the payments will have to be made from the Central Data Processing (CDP) fund, which, the state contends, is part of the state treasury. Thus, the state concludes, the injunction violates the eleventh amendment.
 
 
 6
 I. The Writ of Prohibition.
 
 
 7
 The state attacks the district court's action on the ground that the injunction violates the eleventh amendment. The issue before us is whether an allegedly erroneous decision based upon violation of the eleventh amendment poses such a jurisdictional bar to the district court's power to act that this court should prevent the enforcement of the injunction by way of a writ of prohibition.[3]
 
 
 8
 The Supreme Court has observed an eleventh amendment defense "sufficiently partakes of the nature of a jurisdictional bar" so that it may be raised at any time during judicial proceedings, including on appeal. Edelman v. Jordan, 415 U.S. 651, 677-78, 94 S.Ct. 1347, 1362-1363, 39 L.Ed.2d 662 (1974); Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 467, 65 S.Ct. 347, 352, 89 L.Ed. 389 (1945). However, the Court has also noted that the eleventh amendment does not pose an absolute jurisdictional bar. In Patsy v. Board of Regents, --- U.S. ----, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), the Court said:
 
 
 9
 [B]ecause of the importance of state law in analyzing Eleventh Amendment questions and because the State may, under certain circumstances, waive this defense, we have never held that it is jurisdictional in the sense that it must be raised and decided by this Court on its own motion.
 
 
 10
 Id. at 2568 n. 19.
 
 
 11
 Several courts, including this one, have held that a possibly erroneous decision, even on jurisdictional questions, does not mandate the issuance of a writ. In Ex parte Chicago, Rock Island & Pacific Railway Co., 255 U.S. 273, 274-76, 41 S.Ct. 288, 289-290, 65 L.Ed. 631 (1921), the petitioner sought a writ of mandamus[4] against a district court, alleging that the district court had no personal jurisdiction over the petitioner, and thus should not be allowed to proceed against it. The Court dismissed the petition and held:
 
 
 12
 There is a well-settled rule by which this court is guided upon applications for a writ of prohibition to prevent a lower court from wrongfully assuming jurisdiction of a party, of a cause, or of some collateral matter arising therein. If the lower court is clearly without jurisdiction the writ will ordinarily be granted to one who at the outset objected to the jurisdiction, has preserved his rights by appropriate procedure and has no other remedy. In re Rice, 155 U.S. 396 [15 S.Ct. 149, 39 L.Ed. 198]. If, however, the jurisdiction of the lower court is doubtful, Ex parte Muir, 254 U.S. 522 [41 S.Ct. 185, 65 L.Ed. 383]; or if the jurisdiction depends upon a finding of fact made upon evidence which is not in the record, In re Cooper, 143 U.S. 472, 506, 509 [12 S.Ct. 453, 462-463, 36 L.Ed. 232]; or if the complaining party has an adequate remedy by appeal or otherwise, Ex parte Tiffany, 252 U.S. 32, 37 [40 S.Ct. 239, 241, 64 L.Ed. 443]; Ex parte Harding, 219 U.S. 363 [31 S.Ct. 324, 55 L.Ed. 252]; the writ will ordinarily be denied.
 
 Id. at 275-76, 41 S.Ct. at 289-290.[5]
 
 13
 The Third Circuit observed in American Airlines, Inc. v. Forman, 204 F.2d 230 (3d Cir.1953):
 
 
 14
 The challenged assumption or denial of jurisdiction must be so plainly wrong as to indicate failure to comprehend or refusal to be guided by unambiguous provisions of a statute or settled common law doctrine. If a rational and substantial legal argument can be made in support of the questioned jurisdictional ruling, the case is not appropriate for mandamus or prohibition even though on normal appeal a reviewing court might find reversible error.
 
 Id. at 232.[6]
 
 15
 This court reaffirmed its support for the Forman rule in Pfizer, Inc. v. Lord, 522 F.2d 612 (8th Cir.1975), cert. denied, 424 U.S. 950, 96 S.Ct. 1422, 47 L.Ed.2d 356 (1976). The court declined to decide under a petition for a writ of mandamus whether foreign governments were "persons" entitled to sue for treble damages under the Clayton Act,[7] and held that the district court had the power to decide the jurisdictional question in the first instance, even if that decision later proved to be erroneous:
 
 
 16
 The district court was presented with a difficult question of statutory interpretation, a question apparently of first impression. Even if its decision were erroneous (and we intimate no view on the merits), under the circumstances of this case it would not constitute a clear abuse of discretion.
 
 
 17
 Further, the mere fact that a court might err even on jurisdictional questions does not necessarily amount to a usurpation of power making mandamus appropriate.[8]
 
 
 18
 552 F.2d at 615.
 
 
 19
 In light of the guidelines outlined above, it cannot be said in this case that the district court's action was "so plainly wrong as to indicate failure to comprehend or refusal to be guided by unambiguous provisions of a statute or settled common law doctrine." American Airlines, Inc. v. Forman, 204 F.2d at 232. This court has once held that American may proceed against the individual defendants, notwithstanding the eleventh amendment defense of the state and its Bureau of Administration. American Re-Insurance Co. v. Janklow, 676 F.2d at 1183. In addition, as we will observe in discussing the appeal of the individual officers, it has yet to be determined by any court whether the funds from which payment would be made on the lease are a part of the state's treasury, and thus whether an eleventh amendment defense to payment is applicable.[9]
 
 
 20
 In view of these factors and the less-than-absolute nature of an eleventh amendment jurisdictional bar, we cannot say that the district court's decision to grant the preliminary injunction was such a usurpation of power and a clear abuse of discretion that enforcement of the injunction should be prohibited at this stage in the proceedings. We also note that the individual defendants have appealed the grant of the preliminary injunction and have raised the same eleventh amendment defense on their own behalf that the state raises here. Under the circumstances it is readily apparent that extraordinary circumstances do not exist in this case, and the petition for a writ of prohibition should be denied.
 
 
 21
 II. The Appeal of the Individual State Officials.
 
 
 22
 In our earlier opinion, American Re-Insurance Co. v. Janklow, 676 F.2d 1177 (8th Cir.1982), we held that the district court's dismissal of the complaint as to the individual state officers under an eleventh amendment immunity defense was in error. We observed that at least at the pleading stage American should not be foreclosed from developing its evidentiary proofs. We stated: "At this early stage of the proceedings, appellant American should be given the opportunity to develop its claims against the appellee State officials for their alleged unconstitutional and tortious conduct." Id. at 1181 (footnote omitted). We then added:
 
 
 23
 The Eleventh Amendment is thus no bar if the relief appellant seeks can be fairly characterized as "a necessary consequence of compliance in the future with a substantive federal-question determination." Edelman v. Jordan, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974). Both the injunctive and declaratory aspects of appellant's complaint may be characterized as such. Appellant has not asked for the rent due under the lease as damages, and the injunctive and declaratory relief sought by plaintiff is not equal to specific performance of the lease ....[10]
 
 
 24
 Id.
 
 
 25
 It is clear American has pleaded a colorable constitutional contract claim when viewed in light of the fact that the officers' contention that a state lease is void, because it is for a term in excess of five years, relates to a statute passed two years after the original seven year lease was entered into.[11] However, American's interpretation that our prior opinion establishes the law of the case that the eleventh amendment immunity does not apply to its claim is much too broad. The only rule established in our prior opinion was that American's claim should not be denied at the pleading stage since colorable claims of denial of due process, equal protection, and the contract clause have been sufficiently pled. See Florida Department of State v. Treasure Salvors, Inc., --- U.S. ----, 102 S.Ct. 3304, 3317, 73 L.Ed.2d 1057 (1982); Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 690, 702, 69 S.Ct. 1457, 1467, 93 L.Ed. 1628 (1949).
 
 
 26
 This court in Janklow observed as well: "A prospective injunction, prohibiting further unconstitutional actions or tortious interference with the lease agreement should appellant prove its case, may be appropriate." 676 F.2d at 1183. Thereafter the district court entered an injunction against the state officials. The precise issue now on appeal is whether the scope of the injunction is too broad, requiring specific performance of the lease by the state officials and payment from the state treasury. Obviously, this issue was not decided in our earlier decision; at that time the terms of injunctive relief had not been written.
 
 
 27
 Nonetheless, the question as to whether the preliminary injunction violates the eleventh amendment appears to us to be premature. In our earlier opinion we observed:
 
 
 28
 In dismissing appellant's complaint sua sponte, however, the district court failed to consider whether the Eleventh Amendment would apply to any payment ordered to be made from the CDP Fund, that is, whether the money in the Fund can be considered to be the same as funds from the State's general revenues.
 
 
 29
 Id. at 1184.
 
 
 30
 This question still remains unanswered by the district court.
 
 
 31
 American argues that the date of the injunctive relief issued by the district court is important since it was obtained on June 29, 1982. Thus American's counsel stated in oral argument that if the injunction is upheld, this will possibly allow prospective relief and possible payment of the July 1, 1982, monies from the CDP fund.[12]
 
 
 32
 At the request of the state this court entered a temporary stay of the injunction on July 1, 1982. Assuming American is correct that the eleventh amendment issue is obviated because of the prospective terms of the injunction, in order for plaintiff to benefit from its prospective relief theory our mandate would have to restore the parties to the status quo as of June 30. Thus, to give American the benefit of its theory, if it is correct, and if this court would agree that the injunction did not violate the eleventh amendment, we would have to vacate our stay order nunc pro tunc as of the date of its issue. This being so, since we also find the eleventh amendment issue premature because of the unresolved question surrounding the CDP fund, we determine that our stay issued July 1 should temporarily remain. Under these circumstances, we defer decision on the eleventh amendment issue until American has gone forward with its full evidentiary proof against the four individual officers. Assuming American is successful on the merits of its case, the order granting injunctive relief can then be appealed along with any judgment against the individual defendants. If American is then successful as to the appeal on the merits this court can then determine whether its earlier stay should be vacated nunc pro tunc, thus allowing prospective relief to plaintiff as of June 30, 1982. Of course, if plaintiff is not successful on the merits and judgment is entered for the defendants, the injunction would then be dissolved.
 
 
 33
 The writ of prohibition is denied; the appeal in No. 82-1875 is ordered dismissed without prejudice; each party is to pay its own costs.
 
 
 
 [1]
 American Re-Insurance Co. v. Janklow, 676 F.2d 1177 (8th Cir.1982)
 
 
 [2]
 The injunction read:
 WHEREAS, in an action pending in the United States District Court, District of South Dakota, Southern Division, Civil Case No. 81-4090, entitled American Re-Insurance Company vs. William J. Janklow, et al., American Re-Insurance Company prayed for and obtained from the District Court a preliminary injunction and American Re-Insurance Company having given bond, as required by the order of the Court:
 NOW, THEREFORE, you, the said William J. Janklow, individually and as Governor of the State of South Dakota; Vernon L. Larson, individually and as Auditor of the State of South Dakota; Tim Engelhart, individually and as Director of the Bureau of Administration of the State of South Dakota; and James E. Brinkman, individually and as Director of the Department of Purchasing and Printing of the State of South Dakota, your agents, employees and attorneys are hereby commanded to desist and refrain from any and all interference with the Lease Agreement between CIG Marketing Corporation and the Bureau of Administration on behalf of the State of South Dakota dated March 11, 1976, and subsequently amended June 1, 1976, and July 1, 1976, and including but not limited to specifically refraining from giving effect to the stop-order issued by the acts of the Defendants with reference to IBM 370/158 computer system on February 24, 1981, and any similar subsequent stop-orders, which stop the making of the payments due under this Lease Agreement until the final hearing of this case, or until the further order of this Court.
 
 
 [3]
 A court may issue a writ to confine a lower court to its proper jurisdiction, to compel the court to exercise a jurisdiction properly before it, or to prevent a clear abuse of discretion by the lower court. Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967); Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26, 63 S.Ct. 938, 941-942, 87 L.Ed. 1185 (1943); Iowa Beef Processors, Inc. v. Bagley, 601 F.2d 949, 953 (8th Cir.1979); Rodgers v. United States Steel Corp., 508 F.2d 152, 161 (3d Cir.), cert. denied, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). See also J. High, Extraordinary Legal Remedies Sec. 762, at 706 (3d ed. 1896)
 
 
 [4]
 Although this case concerns a writ of prohibition and not mandamus, "[o]nce power is found to issue a writ, little concern is shown to define the possible technical and historic differences between mandamus and prohibition." 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure, Sec. 3932, at 206-07 (1977) [hereinafter cited as Wright & Miller]; see Ex parte Simons, 247 U.S. 231, 239-40, 38 S.Ct. 497, 488, 62 L.Ed. 1094 (1918)
 
 
 [5]
 Issuance of a writ is not mandatory, even when conditions are shown to be proper for an issuance; a petition for such a writ is directed to the sound discretion of the court. Parr v. United States, 351 U.S. 513, 520, 76 S.Ct. 912, 917, 100 L.Ed. 1377 (1956); Roche v. Evaporated Milk Ass'n, 319 U.S. at 25-26, 63 S.Ct. at 941-942; J. High, supra, Sec. 765, at 709
 
 
 [6]
 This court has followed a similar rule. In Stein v. Collinson, 499 F.2d 91 (8th Cir.1974), a parent corporation filed for reorganization under the Bankruptcy Act. The petitioner, Stein, attempted to cancel his lease with a subsidiary corporation because of the parent's reorganization proceedings. The district court in which the reorganization proceedings were held issued a temporary restraining order against the petitioner to prevent cancellation of the lease. The petitioner applied to this court for an extraordinary writ, arguing that, since the subsidiary was not a party to the reorganization proceedings, the district court had no jurisdiction over its affairs. This court declined to determine whether the district court could properly exercise jurisdiction because the subsidiary could be considered "property" of the parent debtor, and held:
 [I]t is clear that significant factual questions, dispositive on the matter of jurisdiction, have been presented to the district court. Since findings and conclusions are yet to be entered, the district court has so far merely assumed a limited jurisdiction in order to determine the jurisdictional issue. Presented as it was with a condition of urgency, we cannot say that it was an abuse of the court's discretion to enter a temporary restraining order to preserve the status quo pending such determination.
 By seeking mandamus or prohibition relief, petitioners in effect ask us to resolve the jurisdictional issue in the first instance. This we cannot do upon the record presented here.
 Id. at 94 (footnote omitted).
 The court reiterated the rule in Forman that for a writ to issue, "[t]he challenged assumption or denial of jurisdiction must be so plainly wrong as to indicate failure to comprehend or refusal to be guided by unambiguous provisions of a statute or settled common law doctrine." Id. (quoting American Airlines, Inc. v. Forman, 204 F.2d at 232).
 
 
 [7]
 15 U.S.C. Sec. 15
 
 
 [8]
 Although jurisdictional considerations under the All Writs Act have been expanded beyond the technical notions of personal and subject matter jurisdiction, it has never been the rule that all errors are "jurisdictional," i.e., that a court has no power to be wrong. See 16 Wright & Miller, Sec. 3932, at 186. See also In re Alleghany Corp., 634 F.2d 1148 (8th Cir.1980), in which this court said:
 The issue presented for this court is whether [the trial judge] clearly and indisputably acted beyond his power in certifying and notifying the class in this case, given any reasonable interpretation of Rule 23(e). The issue is not whether the District Court correctly determined the issue of law concerning the proper application of Rule 23(e). For if we applied this as the governing criterion, "then every interlocutory order which is wrong might be reviewed under the All Writs Act." Bankers Life & Casualty Co. v. Holland, [346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953) ].
 634 F.2d at 1150.
 See also J. High, supra, Sec. 772: "[I]t matters not whether the court below has decided correctly or erroneously; its jurisdiction being conceded, prohibition will not go to prevent an erroneous exercise of that jurisdiction." Id. at 721 (footnote omitted).
 In Will v. United States, the Supreme Court observed:
 Nor do we understand the Government to argue that a judge has no "power" to enter an erroneous order. Acceptance of this semantic fallacy would undermine the settled limitations upon the power of an appellate court to review interlocutory orders. Neither "jurisdiction" nor "power" can be said to "run the gauntlet of reversible errors." Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 382 [74 S.Ct. 145, 147, 98 L.Ed. 106] (1953). Courts faced with petitions for the peremptory writs must be careful lest they suffer themselves to be misled by labels such as "abuse of discretion" and "want of power" into interlocutory review of nonappealable orders on the mere ground that they may be erroneous. "Certainly Congress knew that some interlocutory orders might be erroneous when it chose to make them nonreviewable." De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 223, 225 [65 S.Ct. 1130, 1135-1136, 89 L.Ed. 1566] (1945) (dissenting opinion of Mr. Justice Douglas).
 389 U.S. at 98 n. 6, 88 S.Ct. at 275 n. 6.
 
 
 [9]
 The state alleges that any payments by the individual defendants would be from the CDP fund, which is comprised of state public funds in the state treasury. Thus, the state argues, the eleventh amendment bars any payment by the individual defendants. See Edelman v. Jordan, 415 U.S. at 663, 94 S.Ct. at 1355-1356. But this court has held that it has not been established that CDP funds are in fact state public funds in the state treasury. American Re-Insurance Co. v. Janklow, 676 F.2d at 1184
 
 
 [10]
 In its complaint plaintiff requested the court to enjoin the defendants from violating American's constitutional, civil, and other rights. The specific language of the district court's injunction is quoted in note 2 supra
 
 
 [11]
 S.D.Comp.Laws Ann. Sec. 1-14-12.6 (1980). See American Re-Insurance Co. v. Janklow, 676 F.2d at 1179
 
 
 [12]
 We note, however, that the Supreme Court has held in a recent opinion that the delineation between prospective and past damages is not necessarily determinative of whether an eleventh amendment issue may be raised by state officials. See Cory v. White, --- U.S. ----, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982)