**In re PEAKSOLUTIONS CORPORATION,**
**Debtor.**

**PEAKSOLUTIONS CORPORATION,**
**Plaintiff,**

v.

**The STATE of Ohio, DEPARTMENT OF TRANSPORTATION and Knowledge Solutions, Inc., Defendants.**

**Bankruptcy No. 3–93–4674.**
**Adv. No. 3–94–28.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

May 25, 1994.

**6.** *See supra,* note 2.

David R. Marshall and William E. Connors, Fredrikson & Byron, P.A., Minneapolis, MN, for plaintiff.

William M. Dickel, Eden Prairie, MN, for defendant Knowledge Solutions, Inc.

Mark R. Miller and Steven T. Hetland, Special Counsel, Hessian, McKasy & Soderberg, Minneapolis, MN, and Marc A. Sigal, Asst. Atty. Gen., State of Ohio, Columbus, OH, for defendant State of Ohio.

1. The Debtor first developed PRS some years back for licensing to the State of Minnesota, and has licensed it to several other states' transporta-

tion departments since then. The program apparently is unique.

## ORDER GRANTING MOTION OF DEFENDANT STATE OF OHIO, DEPARTMENT OF TRANSPORTATION FOR DISMISSAL AND REQUEST OF DEFENDANT KNOWLEDGE SOLUTIONS, INC. FOR ABSTENTION

GREGORY F. KISHEL, Bankruptcy Judge.

The adversary proceeding came on before the Court on March 18, 1994, for hearing on the motion of Defendant State of Ohio, Department of Transportation ("ODOT") for dismissal or for a transfer of proceedings. ODOT appeared by Mark R. Miller and Steven T. Hetland, as special counsel, and by Marc A. Sigal, Assistant Attorney General, State of Ohio. The Plaintiff ("the Debtor") appeared by its attorneys, David R. Marshall and William E. Connors. Defendant Knowledge Solutions, Inc. ("KSI") appeared by its attorney, William M. Dickel. Upon the moving and responsive pleadings, the arguments of counsel, and all of the other files, records, and proceedings herein, the Court makes the following order.

## THE PARTIES, AND THEIR RELATIONSHIP

The Debtor, a Minnesota business corporation, filed a voluntary petition for reorganization under Chapter 11 on September 11, 1993. It remained in possession through the pendency of its case. It obtained confirmation of a plan of reorganization on April 14, 1994, while the matter at bar was under advisement.

At all relevant times, the Debtor was in the business of producing, marketing, and maintaining computer software programs. Its major product was and is a software program known as the "PEAKS RouteBuilder System" ("PRS"). Designed for use by state transportation agencies like ODOT, PRS automates the formulation of routes for the transit of oversized and overweight vehicles across highways within a state, and processes applications from freight haulers for permits to make such transits.[1] On January

1, 1991, the Debtor and ODOT entered a nonexclusive license agreement for PRS. Under it, ODOT gained the right to use PRS; the Debtor was to install the program for ODOT and to provide support services to ODOT for twenty-four months after installation; and ODOT was to make certain payments to the Debtor. Pursuant to the agreement, the Debtor installed PRS into ODOT's microcomputer hardware.

KSI is a Minnesota business corporation. It acknowledges that it is a business competitor of the Debtor.[2] Since August, 1993 it has been providing ODOT with maintenance and support for the PRS system.

## NATURE OF THIS ADVERSARY PROCEEDING

The Debtor filed its complaint in this adversary proceeding on February 14, 1994. In it, the Debtor recites the facts just noted, regarding the parties' several relationships factual and legal. It then alleges that, in violation of Paragraph 6 of the license agreement,[3] ODOT has disclosed certain confidential information from PRS to KSI—most specifically, by providing KSI with a copy of the "source code"[4] for PRS. Terming the disclosure to have been a breach of the agreement, the Debtor maintains that ODOT's license has been terminated by operation of law pursuant to Paragraph 13 of the license agreement.[5]

Citing the remedies provision in paragraph 19 of the license agreement,[6] the Debtor seeks relief against ODOT and KSI in two different sets of counts. It requests essentially the same results in each. As against ODOT, it seeks a judgment mandating ODOT to return the PRS software and related intellectual property to the Debtor pursuant to Paragraph 14 of the license agreement, and an injunction against ODOT's further use or disclosure of the software and its related materials. As against KSI, the Debtor requests a judgment mandating the surrender of those portions of the PRS software

---

2. Testimony for the Debtor's companion motion for a preliminary injunction revealed that KSI's principals, Kent Landerholm and Dale Johnson, are former employees of the Debtor. Landerholm was a member of the team of programmers that developed PRS.

3. This term of the license agreement reads as follows:

 PEAKSolutions' Proprietary Information. The Licensed Materials are the unpublished copyrighted property of [the Debtor], and the ideas, systems, methods of operation and information contained in the Licensed Materials are the proprietary, trade secret information of [the Debtor] (collectively the "PEAKSolutions' Confidential Information"). [ODOT] shall, to the extent allowed by law (a) exercise all due care and take all reasonable precautions to prevent any unauthorized copying of the Licensed Materials or unauthorized disclosure or use of any PEAKSolutions' Confidential Information; (b) not use, disclose, reproduce, or otherwise make available any PEAKSolutions' Confidential Information to any person except [ODOT's] Employees who have a need to know such information; and (c) advise all Permitted Users of the Licensed Materials of the restrictions upon duplication, disclosure and use contained in this Agreement.

 Paragraph 1.4 of the license agreement defines "Licensed Materials" as PRS and its associated user documentation. Paragraph 1.10 defines "Permitted Users" as "those persons authorized by [ODOT] to issue truck permits for such state or governmental body."

4. A "source code" is programming language reduced to an electronic format, so that a computer can read and react to it when it executes a software program for a user.

5. This term reads as follows:

 Termination. The Term and License granted under this Agreement shall terminate automatically and immediately upon [ODOT's] breach of any of the provisions of this Agreement. Sections 1, 3, 4, 6, 7, 9 and 14 through 26 of this Agreement shall survive the termination of this Agreement or the License hereunder.

 The pertinent ones are those that provide that the Debtor retained the ownership of the original and all copies of the form of PRS it was to develop for ODOT, and that ODOT was required to maintain the confidentiality of PRS.

6. This provision reads as follows:

 Remedies. If either party breaches this Agreement, it is recognized that irreparable injury will result that [sic] remedies at law for damages will be inadequate. The offended party will be entitled to an injunction to restrain the continuing breach. The nonbreaching party shall further be entitled to damages, reasonable attorneys' fees, and all other costs and expenses incurred in connection with the enforcement of this Agreement, in addition to any other rights and remedies which the party may have at law or in equity.

that are in KSI's possession, as well as an injunction against KSI's further use or disclosure of the software and its related materials. It also seeks an award of its costs and attorney fees from both defendants.

As the legal basis for its recovery from ODOT, the Debtor pleads 11 U.S.C. §§ 542(a)–(b) [7] as well as the license agreement. As against KSI, the Debtor relies on the same provisions of the Bankruptcy Code, and its allegation that "KSI has violated the federal copyright statutes."

## MATTERS AT BAR

■ ODOT's initial response to the Debtor's complaint is the motion at bar,[8] which it styles under Fed.R.Civ.P. 12(b)(1), *as incorporated by* Fed.R.Bankr.P. 7012(b).[9] Its main argument is that, on its face, the Eleventh Amendment to the United States Constitution deprives this Court of subject-matter jurisdiction over the Debtor's requests for relief against ODOT,[10] and there is no basis for the exercise of such jurisdiction under color of a waiver or statutory abrogation of the Amendment's sovereign immunity. In the alternative, ODOT essentially requests that this Court enforce a "forum selection clause" contained in the license agreement,

by abstaining from hearing and determining the Debtor's requests for relief.

KSI has not made a formal motion to parallel ODOT's motion. However, its counsel did serve and file a memorandum [11] in which it essentially requested that the Court also abstain from and dismiss the Debtor's requests for relief against KSI. To support this request, it argues that all controversies over the current status of PRS under the license agreement should be heard and determined in a single forum.

The Debtor, of course, strongly opposes both ODOT's motion and KSI's request.

## DISCUSSION

### I. ODOT's Motion for Dismissal.

#### A. The Eleventh Amendment.

The Eleventh Amendment to the United States Constitution reads:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

---

7. Subject to exception not material here, these statutes provide, in pertinent part:

 (a) ... [A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under [11 U.S.C. § ] 363 ... shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

 (b) ... [A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset [11 U.S.C. § ] 553 ... against a claim against the debtor.

 As a debtor in possession under Chapter 11 when this adversary proceeding was commenced, the Debtor had the legal status of a trustee in bankruptcy as to these provisions. 11 U.S.C. § 1107(a).

8. ODOT had the option to present the defense of lack of jurisdiction through a motion, rather than by an answer to the complaint. *See* Fed.R.Civ.P. 12(b)(1) and 12(b)(2), *as incorporated by* Fed. R.Bankr.P. 7012(b).

9. This rule identifies the defense of "lack of jurisdiction over the subject matter" as one that may be raised by motion or answer.

10. Strictly speaking, ODOT's characterization of the defense of sovereign immunity as going to *subject-matter* jurisdiction is not accurate. *See In re Prairie Island Dakota Sioux*, 21 F.3d 302, 304 (8th Cir.1994). The defense is still jurisdictional in nature, *id;* its proper rubric, however, is under Rule 12(b)(2)—"lack of jurisdiction over the person." Since that defense can be joined by motion with equal propriety, the point here is not really material.

11. Counsel styled the memorandum as being a response to the Debtor's initial motion for a temporary restraining order. (ODOT's motion for dismissal came quickly on the heels of the Debtor's motion for a T.R.O.) The Debtor's two motions for interim equitable relief and ODOT's motion for dismissal have proceeded in tandem to several hearings. Many matters of fact and several arguments of law span the two proceedings. Thus, notwithstanding the inaccurate styling of KSI's memorandum, the Court has taken cognizance of its arguments in the context of ODOT's motion.

This Amendment bars the use of the federal courts as a forum for the seeking of legal or equitable redress against the sovereign entity of a state government. The Supreme Court has repeatedly emphasized that the Eleventh Amendment is a cornerstone of the federal system of government under the Constitution. *E.g., Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238 n. 2, 105 S.Ct. 3142, 3145 n. 2, 87 L.Ed.2d 171 (1985); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 99–100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984); *Nevada v. Hall,* 440 U.S. 410, 418–420, 99 S.Ct. 1182, 1187–88, 59 L.Ed.2d 416 (Stevens, J., for the majority), 440 U.S. at 430–431, 99 S.Ct. at 1193–94 (Blackmun, J., dissenting), and at 440 U.S. at 437, 99 S.Ct. at 1196 (Rehnquist, J., dissenting) (1979); *Hutto v. Finney,* 437 U.S. 678, 691, 98 S.Ct. 2565, 2574, 57 L.Ed.2d 522 (1978).

■ The posture of the parties in this adversary proceeding satisfies the predicate elements for the bar, as they appear on the face of the Amendment. As against ODOT, the Debtor seeks one form of relief that unquestionably lies "in equity"—an injunction against ODOT's further use of PRS and any further disclosure of PRS or its contents to any third party. Categorized as an exercise of *in rem* jurisdiction over property alleged to have been property of the bankruptcy estate, and having a court-ordered surrender of that property as its goal, its other request for relief could be considered as being equitable in nature. Under the analysis of recent Supreme Court jurisprudence in the bankruptcy area, it may well be also legal in nature. *See Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 46 n. 5, 109 S.Ct. 2782, 2793 n. 5, 106 L.Ed.2d 26 (1989) (quoting *Whitehead v. Shattuck,* 138 U.S. 146, 151, 11 S.Ct. 276, 277, 34 L.Ed. 873 (1891), for proposition that action "simply for the recovery and possession of specific ... personal property ... is one at law"). As an administrative agency, ODOT is indistinguishable from the State of Ohio for the purposes of the Eleventh Amendment. *Deretich v. Office of Administrative Hearings,* 798 F.2d 1147, 1154 (8th Cir.1986); *Schuler v. Univ. of Minnesota,* 788 F.2d 510, 516 (8th Cir.1986); *cert. den.,* 479 U.S. 1056,

107 S.Ct. 932, 93 L.Ed.2d 983 (1987); *American Re–Insurance Co. v. Janklow,* 676 F.2d 1177, 1184 (8th Cir.1982), *app. after remand,* 692 F.2d 1158 (8th Cir.1982).

The Debtor has not argued that the Eleventh Amendment does not apply on its face to its complaint against ODOT—and, indeed, there is no conceivable principled basis for such a position. This Court can exercise jurisdiction over the subject matter of the Debtor's complaint against ODOT, then, only if the operation of the Eleventh Amendment has been overridden through one of the fairly narrow means recognized under law. *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990); *Atascadero State Hospital v. Scanlan,* 473 U.S. at 237–241, 105 S.Ct. at 3144–3147; *Pennhurst State School & Hospital v. Halderman,* 465 U.S. at 99, 104 S.Ct. at 907; *In re 995 Fifth Avenue Assoc., L.P.,* 963 F.2d 503, 507 (2d Cir.1992). *Accord, United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983); *Small Business Admin. v. Rinehart,* 887 F.2d 165, 169 (8th Cir.1989) (as to sovereign immunity in general).

### B. Waiver.

One such override is provided by an actual or deemed waiver of the Eleventh Amendment immunity.

■ As a general principle, waiver in fact is an objectively-expressed and intentional relinquishment of a known right. *E.g., In re Johnson,* 139 B.R. 208, 217 (Bankr.D.Minn. 1992). The Supreme Court has long recognized that a State may actually waive its immunity and may consent to suit in federal court. *E.g., Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 882, 27 L.Ed. 780 (1883). Consistent with the general requirement for waiver, however,

> [a] State will be deemed to have waived its immunity "only where stated 'by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.' "

*Atascadero State Hospital v. Scanlon,* 473 U.S. at 239–40, 105 S.Ct. at 3146–46 (quoting *Edelman v. Jordan,* 415 U.S. 651, 673, 94

S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974), which in turn quotes *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)); *Port Authority Trans–Hudson Corp. v. Feeney*, 495 U.S. at 305–06, 110 S.Ct. at 1872–73. Such an intention can be manifested by a State's adoption of a constitutional provision or enactment of legislation in which it consents to being sued in federal court. *Port Authority Trans–Hudson Corp. v. Feeney*, 495 U.S. at 306, 110 S.Ct. at 1873; *In re 995 Fifth Ave. Assoc., L.P.*, 963 F.2d at 507. It can also be evidenced by a State's active participation in litigation against it in federal court without protest. *In re 995 Fifth Ave. Assoc., L.P.*, 963 F.2d at 507.

ODOT has never expressed any such intention for the purposes of this adversary proceeding; to the contrary, it quite overtly and tenaciously insists on its right to the protection of the Amendment.

■■■ This leaves "deemed" waiver—that is, the sort that, for whatever reason, the law pronounces to have occurred upon the taking of a specified predicate action. Even such a deemed waiver must come about by operation of an express statute or other law and a simple, deliberate, and unequivocal triggering act by the State, as specified in the statute. *See Atascadero State Hospital v. Scanlon*, 473 U.S. at 238 n. 1, 105 S.Ct. at 3145 n. 1; *In re 995 Fifth Ave. Assoc., L.P.*, 963 F.2d at 507–508.

■■■ For the purposes of a bankruptcy case, a governmental entity may be deemed to have waived sovereign immunity under two related statutory provisions, 11 U.S.C. §§ 106(a)-(b).[12] In both of them, however, the existence of a claim in favor of the governmental entity and against the bankruptcy

estate is a necessary—and key—element. *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 101, 109 S.Ct. 2818, 2822, 106 L.Ed.2d 76 (1989); *In re Four Seasons Care Centers, Inc.*, 119 B.R. 681, 684–85 (Bankr.D.Minn.1990). Clearly, the thought behind these provisions is that, once a governmental entity has a right to share in the assets of the estate, the federal courts should be fully empowered as a forum to fix and liquidate the extent of the share. These provisions enable the Bankruptcy Court to adjudicate the estate's counterclaims against such governmental claimants, whether they are compulsory counterclaims "that arose out of the same transaction or occurrence out of which such governmental unit's claim arose," § 106(a), or are permissive counterclaims subject to a limitation, the netting-out of offset, § 106(b). *See U.S. v. Nordic Village, Inc.*, — U.S. —, —, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992); *United States v. McPeck*, 910 F.2d 509, 512–513 (8th Cir.1990); *In re Four Seasons Care Centers, Inc.*, 119 B.R. at 683–684.

As ODOT's counsel points out, these provisions do not avail the Debtor; ODOT has not filed or otherwise asserted a claim against the Debtor's estate, and the Debtor does not list one in favor of ODOT in its bankruptcy schedules.[13] As a result, this Court cannot deem ODOT to have waived sovereign immunity as to any legal or equitable claim that the Debtor has against it.

### C. Abrogation.

For some time, the Supreme Court has held that Congress can abrogate the States' Eleventh Amendment immunity. *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. at 101, 109 S.Ct. at 2822; *Atascadero State Hospital v. Scanlon*, 473 U.S. at 238, 105 S.Ct. at 3145; *Fitzpatrick v. Bitzer*, 427

---

12. These statutes provide as follows:

 (a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the [bankruptcy] estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

 (b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the [bankruptcy] estate.

13. The Debtor could have scheduled a claim in favor of ODOT in a liquidated amount and as undisputed and noncontingent; that schedule entry then would have "constitute[d] prima facie evidence of the validity and amount of the claims ..." FED.R.BANKR.P. 3003(b)(1). Whether such a unilateral action could have triggered the deemed waiver of §§ 106(a)—(b) in light of such pronouncements as that in *Edelman v. Jordan*, 415 U.S. at 673, 94 S.Ct. at 1360, is an intriguing question. However, it is not presented by the matter at bar.

U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976).[14] To do so, however, "Congress must make its intention 'unmistakably clear in the language of the statute.'" *Hoffman v. Connecticut Dept. of Income Maintenance,* 492 U.S. at 101, 109 S.Ct. at 2822 (quoting *Atascadero State Hospital v. Scanlon,* 473 U.S. at 242, 105 S.Ct. at 3147). *See also Dellmuth v. Muth,* 491 U.S. 223, 230, 109 S.Ct. 2397, 2401, 105 L.Ed.2d 181 (1989) (evidence of congressional intent to abrogate Eleventh Amendment immunity must be "both unequivocal and textual"); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. at 99, 104 S.Ct. at 907; *Quern v. Jordan,* 440 U.S. 332, 342–345, 99 S.Ct. 1139, 1146–1148, 59 L.Ed.2d 358 (1979). *Cf. United States v. Nordic Village, Inc.,* — U.S. at —, 112 S.Ct. at 1014, and cases cited therein (congressional *waiver of federal* government's sovereign immunity must be "unequivocally expressed").

In *Hoffman,* the Court addressed the question of whether 11 U.S.C. § 106(c)[15] abrogated the Eleventh Amendment immunity of a State for the purposes of two different sorts of actions by a trustee in bankruptcy: one to avoid a debtor's pre-petition payment of state taxes as a preferential transfer under 11 U.S.C. § 547(b), and one to recover monies alleged to be owing to the bankruptcy estate as a result of another debtor's pre-petition provision of nursing-home services under the Medicaid program. A plurality of the Court stated that it did not, based on an analysis of the full text of § 106 and its resulting conclusion that § 106(c) was not an "unmistakably clear" expression as to these two sorts of actions.

The plurality first concluded that construing § 106(c) to effect a broad abrogation would make no sense, in light of the narrow scope of the waivers or abrogations in §§ 106(a) and (b); such a construction would render the "carefully" crafted limitations of the earlier two provisions into surplusage. 492 U.S. at 101–02, 109 S.Ct. at 2822–23. As a result, the plurality rejected the trustee's contention that sovereign immunity (including Eleventh Amendment immunity) would be abrogated in all proceedings founded on substantive provisions of the Bankruptcy Code where the "trigger words" specified in § 106(c)(1) were present, and in which a State could be identified to one of the trigger words. 492 U.S. at 102, 109 S.Ct. at 2823. In reaching this conclusion, the plurality attached great significance to the fact that § 106(c)(2) refers to "determination[s] ... of issue[s] arising under" provisions containing the trigger-words. The plurality contrasted the more limited concept of a "determination of an issue" with the earlier two subsections' broader grant of authority to actually adjust economic rights via the fixing and liquidation of claims. It then noted that "[n]othing in § 106(c) provides a[n] ... express authorization for monetary recovery from the States" that was similar to that provided in §§ 106(a)-(b). As a result, it summarized, Congress did not intend to abrogate the Eleventh Amendment immunity for the two sorts of proceedings for monetary recovery that were before it.

As authority for citation in bankruptcy proceedings, *Hoffman* probably creates more uncertainties than it resolves. Its status as a plurality opinion leaves its efficacy as binding precedent somewhat problematic. The ex-

---

**14.** In pre-*Hoffman* decisions, the Court countenanced such legislative abrogation only where Congress effected it in exercise of the enforcement power granted by § 5 of the Fourteenth Amendment to the Constitution, to protect the substantive guarantees of that Amendment. *Atascadero State Hospital v. Scanlon,* 473 U.S. at 238, 105 S.Ct. at 3145; *Fitzpatrick v. Bitzer,* 427 U.S. at 456, 96 S.Ct. at 2671. For some reason, the *Hoffman* Court did not mention this limitation in its rationale. *See also In re Erlin Manor Nursing Home, Inc.,* 86 B.R. 307, 311 (D.Mass. 1985) (similarly concluding enactment of § 106(b)–(c) abrogated Eleventh Amendment, but on explicit conclusion that the Bankruptcy

Clause, Art. 1, § 8, cl. 4 of the Constitution, was source of Congress's power to do so).

**15.** This statute provides as follows:

(c) Except as provided in ... [11 U.S.C. §§ 106(a)–(b)] and notwithstanding any assertion of sovereign immunity—

(1) a provision of ... [the Bankruptcy Code] that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue rising under such a provision binds governmental units.

pression of its underlying reasoning is not as pointed as could be desired. Its text contains several passages that could be invoked on either side of an issue such as the one at bar. Indeed, ODOT and the Debtor have done just that.

In arguing that *Hoffman* does not bar this adversary proceeding, the Debtor relies on one of the plurality's observations in *dicta:*

> The language of § 106(c)(2) is more indicative of declaratory and injunctive relief than of monetary recovery.

492 U.S. at 102, 109 S.Ct. at 2823. In several subsequent decisions, bankruptcy courts have relied on this verbiage—and little more—to find a general abrogation of Eleventh Amendment immunity for proceedings in bankruptcy cases in which a party seeks equitable relief against a State. *In re Lopez Devel., Inc.,* 154 B.R. 607, 609 (Bankr. S.D.Fla.1993); *In re USA Rent-A-Car/Florida, Inc.,* 149 B.R. 695, 697–98 (Bankr. M.D.Fla.1992). The problem with these decisions, however, is they accept *dicta*—and *dicta* that truly is phrased as a conjecture—as a binding ruling on the merits. Beyond that, they do so without any analysis of the abstruse principles that inform the issues before them.

On the other hand, after making it reasonably clear that its result turned on the fact that the trustee before it was seeking monetary relief, the *Hoffman* plurality rather sweepingly pronounced "that in enacting § 106(c) Congress did not abrogate the Eleventh Amendment immunity of the States,"

492 U.S. at 104, 109 S.Ct. at 2824, without a nod toward the possible qualification in its earlier *dicta.* While ODOT does not exclusively rely on the breadth of this pronouncement, it does set it up as a backdrop in a fashion that is not entirely merited by the thrust of the full opinion.

Ultimately, *Hoffman* is instructive for this adversary proceeding in a way that it suggests, but does not fully articulate. In focusing on § 106(c)(2) as the pivot on which any abrogation must turn, *Hoffman* clearly contemplates that, in a proceeding for declaratory or injunctive relief, the substantive basis for the claims in suit determines whether a governmental entity must submit to the adjudicative authority of the federal courts. If *Hoffman* is interpreted in this light, there emerges a defensible formula for an application of its reasoning to the matter at bar.

By its very terms, § 106(c) lies only when one of its trigger-words appears in the text of a Bankruptcy Code provision that applies to the proceeding in question. Whether § 106(c) overcomes the Eleventh Amendment bar in a proceeding for declaratory or injunctive relief, however, depends on the identity of the trigger-word that is present. Clearly, the use of the phrase "governmental unit" in statutory text evidences a Congressional intent to "bind" this very specific sort of claimant to at least some sorts of adjudications, notwithstanding an assertion of sovereign immunity. Thus, as the Supreme Court noted in *Hoffman,* 11 U.S.C. § 505,[16] which does contain these trigger-

---

16. This statute provides as follows:

(a)(1) Except as provided in [11 U.S.C. § 505(a)(2)], the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under [the Bankruptcy Code]; or

(B) any right of the estate to a tax refund, before the earlier of—

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or (ii) a determination by such governmental unit of such request.

(b) A trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case by submitting a tax return for such tax and a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax. Unless such return is fraudulent, or contains a material misrepresentation, the trustee, the debtor, and any successor to the debtor are discharged from any liability for such tax—

(1) upon payment of the tax shown on such return, if—

(A) such governmental unit does not notify the trustee, within 60 days after such re-

words,[17] may be invoked by a debtor or a trustee to get a "determination" of a tax liability in the Bankruptcy Court, whether as to amount, legality, or dischargeability. 492 U.S. at 102, 109 S.Ct. at 2823. Where, however, the invoked Code provision does not refer to a "governmental unit" and the State in question is identifiable only as a "creditor" or "entity" under that provision, the result will be different. In such a case, the State's Eleventh Amendment immunity is overcome only if the factual or legal issue posed by a proceeding for nonmonetary relief "arises" under the invoked Code provision—i.e., if the Code provision furnishes a *substantive rule of law* for the issue, and not just a remedy for the redress or protection of rights created or governed by non-bankruptcy substantive law.

This construction gives full effect to Congress's choice of wording to identify just the class of dispute to which it sought to bind governmental units to a decision in the Bankruptcy Court. The choice of the highlighted phrase cannot have been an accident; as numerous courts have observed, in the bankruptcy context Congress denotes the concept of substantive legal governance of the outcome when it uses the phrase "arising under" in conjunction with a reference to a statutory provision in the Bankruptcy Code. *E.g. In re Wood,* 825 F.2d 90, 96–97 (5th Cir.1987) ("arising under" provision of Bankruptcy Code denotes proceeding based on right expressly created by Code); *Nat'l City Bank v. Coopers & Lybrand,* 802 F.2d 990, 994 (8th Cir.1986) (proceeding does not "arise under" Bankruptcy Code where claims therein are not "based on a provision of" Code); *In re Leco Ent., Inc.,* 144 B.R. 244, 248–49 (S.D.N.Y.1992) (proceeding "arises under" Bankruptcy Code if it "invokes a substantive right provided by" Code); *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,* 130 B.R. 405, 407 (S.D.N.Y.1991); *In re New York Internat'l Hostel, Inc.,* 142 B.R. 90, 93–94 (Bankr.S.D.N.Y.1992); *In re Chambers,* 125 B.R. 788, 793 (Bankr.W.D.Mo.1991); *In re Kolinsky,* 100 B.R. 695, 701 (Bankr. S.D.N.Y.1989); *In re Chargit Inc.,* 81 B.R. 243, 247 (Bankr.S.D.N.Y.1987).

Under this interpretation, in the non-"government unit" context § 106(c) would abrogate Eleventh Amendment immunity whenever a State is a party-defendant to any bankruptcy proceeding in which the plaintiff is seeking nonmonetary relief, in enforcement of a substantive legal right created by the Bankruptcy Code. The flip side of the proposition is clear, at least as far as the matter at bar is concerned: where the relief sought against a defendant State is not governed by substantive statutory bankruptcy law, and has nothing to do with the determination of tax liability, the Eleventh Amendment bars suit, even where the form of relief sought is injunctive or declaratory.

 This application makes the most sense and comports most with the language and structure of the statute.[18] Under this

---

quest, that such return has been selected for examination; or

(B) such governmental unit does not complete such an examination and notify the trustee of any tax due, within 180 days after such request or within such additional time as the court, for cause, permits;

(2) upon payment of the tax determined by the court, after notice and a hearing, after completion by such governmental unit of such examination; or

(3) upon payment of the tax determined by such governmental unit to be due.

(c) Notwithstanding [11 U.S.C. § ] 362 ..., after determination by the court of a tax under this section, the governmental unit charged with responsibility for collection of such tax may assess such tax against the estate, the debtor, or a successor to the debtor, as the case may be, subject to any otherwise applicable law.

**17.** Section 505 contains the phrase "governmental unit" several times throughout §§ 505(a)(2)(B), 505(b), and 505(c); even though it does not contain it in § 505(a)(1), which is the section's basic empowerment clause, the Supreme Court noted that this subsection "obviously should bind the governmental unit" that is responsible for assessing and collecting a tax. 492 U.S. at 102, 109 S.Ct. at 2823.

**18.** There are at least two other constructions to be given to § 106(c); to the extent that they are not defeated outright by *Hoffman,* however, they simply are not defensible. Supported by the observation that § 106(c)(2) is "more indicative of declaratory and injunctive relief," 492 U.S. at 102, 109 S.Ct. at 2823, and bolstered by the favorable speculations in *U.S. v. Nordic Village, Inc.,* —— U.S. at ——–——, 112 S.Ct. at 1015–1016, one could conclude that § 106(c) abrogates sovereign immunity in *all* proceedings in which

construction, § 106(c) lowers the bar of sovereign immunity in at least several contexts: the determination of the dischargeability of a debt owed to a government administrative agency, *In re Neavear,* 674 F.2d 1201, 1203–04 (7th Cir.1982); the determination of whether a governmental unit violated the automatic stay of 11 U.S.C. § 362(a), or the discharge injunction of § 524(a), *cf. Small Business Admin. v. Rinehart;* and the determination of tax liability, as discussed earlier. It may work to this effect in other contexts, but that is a matter for further development in future cases.

■■■■■ Section 542(a) is the only substantive provision of the Bankruptcy Code on which the Debtor relies for the purposes of the motion at bar.[19] This provision empowers a trustee in bankruptcy to compel the physical surrender of assets of the bankruptcy estate. It operates to promote efficient administration. It does not, however, create any substantive rights, whether in the nature of property interests or by way of legal recovery. The existence, nature, and extent of the estate's property rights in the underlying assets are governed by state law. *Barnhill v. Johnson,* —— U.S. ——, ——, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992); *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979); *Johnson v. First Nat'l Bank of Montevideo,* 719 F.2d 270, 273–74 (8th Cir.1983), *cert. den.,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *California Board of Equalization v. MGM Liquor Warehouse,* 52 B.R. 77, 80 (D.Minn.1985). Section 542 only creates a remedy for the trustee to wield, as successor to the pre-petition debtor; it rounds out the broad scope of 11 U.S.C. § 541(a)(1),[20] by making it clear that physical possession as of the commencement of a bankruptcy case does not determine the status of assets as property of the estate, or limit the trustee's ultimate options to dispose of them.

ODOT has not filed an answer to the Debtor's complaint, so the full parameter of its substantive defenses do not yet appear from the record. As outlined in its pleadings to date, however, ODOT denies that it has breached the license agreement in such a fashion to terminate its ongoing right to possess and use PRS. The factual basis for this position is not set forth in detail, but the preponderant one is ODOT's complaint that the Debtor failed to support and maintain the software in ODOT's operations. It is not really clear whether ODOT advances this to support a theory of anticipatory breach, or some other excuse or justification for its admitted release of a portion of the source code to KSI's employees. In the last instance, however, ODOT clearly feels that its full contractual expectations for the product were being frustrated by the Debtor, that it was legally aggrieved, and that it had a right to redress for that grievance, whether through self-help, through legal channels, or both.

The Debtor, of course, dismisses ODOT's rationale by referring to various provisions of

the plaintiff seeks declaratory or injunctive relief against a State, so long as the defendant-State can be tagged with one of the "trigger words" of § 106(c)(1). The *Hoffman* court, however, clearly expressed disfavor for this construction by its observation that, with no more limitation than that, "§ 106(c) would apply in a scattershot fashion to over 100 Code provisions." 492 U.S. at 102, 109 S.Ct. at 2823. On the other hand, one could somehow construe the § 106(c) abrogation as being even more limited, by imposing some further and more abstruse qualification not suggested by the text of the statute. This would wholly ignore the clear thrust of the analysis in *Hoffman* and *Nordic Village.* Beyond that, it would defeat the jurisdictional result that Congress very arguably was driving at—placing the States under the equity jurisdiction of the federal forum, and subject to the adjudicative authority of the bankruptcy court, where the substantive law governing their disputes with other parties was entirely federal in origin, where that law was within the unique expertise of a designated tribunal, and where the according of such relief would almost always relate to the two central functions of bankruptcy: the grant of discharge and the administration of the estate.

19. The Debtor also pleaded § 542(b) in its complaint. However, it has not identified a matured and payable debt, i.e., monetary obligation, that would be the subject of this form of "turnover." This is just as well; given the tenor of the Supreme Court's decisions, such a request for relief would have to be bounced from the federal courts' jurisdiction immediately.

20. This provision makes "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case" property of the estate.

the license agreement. These, it argues, prevent ODOT from denying the existence of a breach, deem that the Debtor has suffered irreparable injury as a consequence, and then give it an absolute right to recover PRS from ODOT. The Debtor's theory may or may not be amenable to summary adjudication, as it was preparing to request.[21] However, viewed in light of the uncontroverted portions of the parties' history, ODOT's legal theory cannot be dismissed as nonmeritorious on its face. If these contentions are to be judicially resolved, they will be through the application of the state law of contract. The issues of fact and law here "arise under" the license agreement, as it is to be construed under the laws of the state of Ohio.[22] They do not "arise under" § 542; that provision only empowered a court of appropriate jurisdiction to enforce the remedies clause of the license agreement after an adjudication of breach. The Debtor has not—and cannot—point to any other provision of the Bankruptcy Code under which the issues "arise."

The import of all this, in light of *Hoffman* and *Nordic Village,* is that § 106(c) does not override the Eleventh Amendment to empower this Court to bind ODOT to an adjudication of the Debtor's complaint for declaratory, injunctive, and turnover relief. This Court lacks jurisdiction over that complaint, and ODOT's motion for dismissal must be granted.[23]

## II. KSI'S REQUEST FOR ABSTENTION

As noted earlier, for some reason KSI's counsel chose to bury his client's parallel request for final dispositive relief in his response to the Debtor's motion for a temporary restraining order, and to cast it tersely and in somewhat conclusory language:

> Any decision regarding the claims against KSI are [sic] dependant upon the rights of [ODOT] to contract with KSI.... [L]acking jurisdiction, this court cannot adjudicate [ODOT's] rights. Lacking such a determination, it is not proper to consider [the Debtor's] claims against KSI.

*Knowledge Solutions, Inc. Memorandum in Opposition to Debtor's Motion for a Temporary Restraining Order* (filed February 24, 1994) at 4. In the same memorandum, KSI acknowledges that the Debtor's claims against it are, at the least, a proceeding "related to" the Debtor's Chapter 11 case, and are thus properly subject to concurrent federal jurisdiction under 28 U.S.C. § 1334(b).[24] However, in a section in that memorandum entitled "Conclusion," KSI "respectfully requests this Court to dismiss this action in its entirety," in favor of litigation in the Ohio state courts.

KSI's counsel does not frame this request for relief with any great precision, and does not cite any statutory or caselaw authority for it. What he seems to request, however, is that this Court abstain from hearing and deciding the Debtor's requests for declaratory and injunctive relief[25] against his client, in favor of their litigation and decision in some other form. Of the statutory sources of authority for such judicial action in a bankruptcy proceeding, the only suitable one would appear to be 28 U.S.C. § 1334(c)(1):

**21.** Several days before the final hearing on ODOT's motion, the Debtor filed a motion for summary judgment. The Court deferred all further proceedings on that motion.

**22.** Paragraph 24 of the license agreement provides:

Conduct of this Agreement shall be governed by and construed in accordance with Federal, Ohio and local laws.... This contract will be interpreted under the laws of Ohio.

**23.** This conclusion renders unnecessary any treatment of ODOT's argument that the "forum selection clause" in paragraph 24 of the license agreement required the Debtor to sue out this action in the Ohio state courts.

**24.** This statute provides:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under [the Bankruptcy Code], or arising in or related to cases under [the Bankruptcy Code].

**25.** The Debtor's request for turnover against KSI—i.e., the surrender of the parts of the source code that were in the possession of KSI's employees—became moot; KSI voluntarily gave them up during the pendency of the motion at bar.

Nothing in this section[26] prevents a district court[27] in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under [the Bankruptcy Code] or arising in or related to a case under [the Bankruptcy Code].

The thought underlying KSI's position is that the Debtor's request for relief against it are derivative of its requests for relief against ODOT, and are so intertwined factually with them, that all of these claims should be heard and adjudicated in one proceeding in one forum. The interests of judicial economy, and the Courts' general interest in ensuring finality and uniformity of judgments, bear out this thought. The two separate sets of counts in the Debtor's complaint involve many common factual issues, and legal issues that are to some extent sequential. It would make much sense to have them litigated and decided in one forum; this would avoid the possibility of inconsistent adjudications, and it would avoid the prospect of troublesome collateral estoppel issues in a second lawsuit if separate actions against the two defendants were to go ahead.

Given the fact that the Debtor's claims against ODOT cannot proceed in this forum, these considerations fully warrant this Court in abstaining from hearing and determining its claims against KSI. *In re Marine Iron & Shipbuilding Co.*, 104 B.R. 976, 988 (D.Minn. 1989). The fact that those claims may require the application of different sorts of substantive law (the Ohio law of contract, versus federal copyright law), while not irrelevant, does not outweigh the broader and weightier concerns that favor abstention.

As terse and unfocused as KSI's request was, then, it must be granted.

## ORDER

On the forgoing memorandum of decision, then,

IT IS HEREBY ORDERED:

1. That the Plaintiff's requests for relief against Defendant the State of Ohio, Department of Transportation, as set forth in Counts I and II of its complaint, are dismissed, for want of jurisdiction over that defendant.

2. That, pursuant to 28 U.S.C. § 1334(c)(1), this Court abstains from hearing and determining the Plaintiff's requests for relief against Defendant Knowledge Systems, Inc., as set forth in Counts III and IV of the Plaintiff's complaint.

3. That, accordingly, the Plaintiff's requests for relief against Defendant Knowledge Systems, Inc. are dismissed, without prejudice to their renewal in another forum of appropriate jurisdiction.

---

**26.** This reference stems from the fact that 28 U.S.C. § 1334(c)(1) is part of 28 U.S.C. § 1334—the statute that grants the federal district courts with original and exclusive jurisdiction of all cases under the Bankruptcy Code, and original but not exclusive jurisdiction of all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code.

**27.** Although the statute refers to the district court, bankruptcy judges have authority to hear motions for abstention in the first instance, as part of the general reference of cases and proceedings pursuant to 28 U.S.C. § 157(a). *In re Fulda Ind. Co-op.*, 130 B.R. 967, 972–73 n. 5 (Bankr.D.Minn.1991).